**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>DIANE KLEMZ, JOHN JENSEN, JOE GAYTAN, LAURA DRZEWIECKI, MARY MAC MCCLOSKEY, MARYAOKE KAROAKE, INC., and CHERYL BAGGS,<br><br>    Defendants. | Case No.: |

**COMPLAINT**

The Plaintiff, Slep-Tone Entertainment Corporation ("Slep-Tone"), by its undersigned counsel, hereby complains of Defendants, and for its Complaint alleges as follows:

**JURISDICTION AND VENUE**

1.      This is an action for trademark infringement and unfair competition arising under 15 U.S.C. §§ 1114 and 1125.  This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

2.      This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to Slep-Tone's Lanham Act unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because all of the Defendants reside in the State of Illinois and the United States District Court for the Northern District of Illinois.

4.      This Court has personal jurisdiction over each Defendant, in that each of them resides in this State and federal judicial district and conducts significant business here, and in that the acts of which the Defendants stand accused were undertaken in this State and federal judicial district.

## THE PLAINTIFF

5.      Plaintiff Slep-Tone is a North Carolina corporation having its principal place of business in Charlotte, North Carolina.

## THE DEFENDANTS

6.      Defendant Diane Klemz is an individual who resides in St. Charles, Illinois. Klemz is engaged in the business of providing karaoke entertainment, and she conducts her business at multiple venues in this State, including but not limited to St. Charles, Illinois; Batavia, Illinois; Montgomery, Illinois; and Geneva, Illinois.

7.      Defendant John Jensen is an individual who resides in Woodstock, Illinois. Jensen operates Double J Entertainment (an unregistered entity in the State of Illinois).  He is engaged in the business of providing karaoke entertainment, and conducts his business at multiple venues in this State, including but not limited to Woodstock, Illinois.

8.      Defendant Joe Gaytan is an individual who resides in Elgin, Illinois.  Gaytan is engaged in the business of providing karaoke entertainment, and he conducts his business at multiple venues in this State, including but not limited to Elgin, Illinois; Schaumburg, Illinois; and Sycamore, Illinois.

9.      Defendant Laura Drzewiecki is an individual who resides in Elgin, Illinois. Drzewiecki operates Lady Paige Entertainment (an unregistered entity in the State of Illinois). She is engaged in the business of providing karaoke entertainment, and conducts her business at multiple venues in this State, including but not limited to West Dundee, Illinois; Hanover Park, Illinois; and Schaumburg, Illinois.

10.      Defendant Mary Mac McCloskey is an individual who resides in Chicago, Illinois.  McCloskey operates Maryaoke Karaoke, Inc., an entity organized under the laws of the State of Illinois.  McCloskey and Maryaoke Karaoke have at least four other individuals working as karaoke entertainers.  McCloskey and Maryaoke Karaoke, as well as their agents, are engaged in the business of providing karaoke entertainment, and conducts their business at multiple venues in this State, including but not limited to Chicago, Illinois.

11.      Defendant Cheryl Baggs is an individual who resides in New Lennox, Illinois. Baggs operates Toplist Karaoke, Inc. (an unregistered entity in the State of Illinois).  She is engaged in the business of providing karaoke entertainment, and conducts her business at multiple venues in this State, including but not limited to Shorewood, Illinois; Frankfort, Illinois; New Lennox, Illinois; Tinley Park, Illinois; Lockport, Illinois; Joliet, Illinois; and Elwood, Illinois.

## BACKGROUND FACTS

12.      Slep-Tone is the manufacturer and distributor of karaoke accompaniment tracks sold under the trademark SOUND CHOICE.

13.      Slep-Tone is recognized as a leading producer of high-quality karaoke accompaniment tracks and has invested more than $18 million to re-record and replicate the

authentic sound of approximately 18,000 popular songs across different eras and genres of music.

14.     Slep-Tone's dedication to producing music of the highest quality and the most authentic character led to its SOUND CHOICE label being the most recognizable and sought-after in the industry.

15.     Throughout its history, Slep-Tone has released its products for commercial use exclusively on physical media—initially, cassette tapes, and then compact discs beginning in approximately 1994.

16.     Originally, Slep-Tone's compact discs contained karaoke tracks encoded in a special format known as "CD+G," or "compact disc [audio] plus graphics," that allows for synchronized playback of audio and video suitable for prompting singers with lyrics cues.

17.     CD+G discs required special players that were capable of decoding the CD+G format.

18.     More recently, computer technology that allows the karaoke tracks stored on compact discs in CD+G format to be decoded and "ripped" (copied) to a computer hard drive has become widely available.

19.     Copies of karaoke tracks stored on media other than the original compact discs are referred to as "media-shifted copies" because they have been duplicated from the original media and written to non-original media.

20.     Media-shifting also frequently involves format-shifting, the conversion from the original format (such as CD+G) to another format (such as MP3+G or WAV+G).

21.     As the price of computer hard drives of ever-larger size has fallen, professional users now have the technical ability to store a large number of karaoke accompaniment tracks on

hard drives for convenient transport to their karaoke shows, without also carrying large numbers of compact discs.

22.     As a result, most professional karaoke operators have shifted to the use of ripped karaoke tracks stored on computer media such as hard drives as a matter of convenience.

23.     However, the same technology is capable of being used not only for convenience but also to allow—on a technical level—the operator to use more music than he or she has paid for and, in some cases, to avoid paying for music at all.

24.     Karaoke operators have used the available technology to copy one purchased disc to two or more computer systems for simultaneous use; to copy their patrons' discs to the operator's computer hard drive at a show; to "swap" song files with other operators; to obtain and share karaoke tracks via file-sharing sites and torrents; to purchase computer hard drives that were pre-loaded with copies of karaoke tracks; and to sell off their original media in the secondary market once they have ripped those media to a hard drive.

25.     The foregoing activities nearly drove Slep-Tone out of business because it became relatively easy to obtain free, or at a nominal cost, illicit copies of products that would cost tens of thousands of dollars if purchased at retail.

26.     Historically, Slep-Tone opposed the shifting of SOUND CHOICE karaoke tracks to alternative media, warning purchasers of CD+G discs that unauthorized copying was a violation of applicable laws.

27.     More recently, however, Slep-Tone established a media-shifting policy ("MSP") that imposes mandatory rules for karaoke operators who use media-shifted copies of SOUND CHOICE karaoke tracks to provide commercial karaoke services.

28.     Briefly stated, the MSP requires compliance with four conditions:  (a) 1:1 ("one-to-one") correspondence, meaning that for every media-shifted SOUND CHOICE karaoke track on a given medium such as a computer hard drive, the operator owns and maintains possession of a lawful original SOUND CHOICE karaoke track on its original medium, on a one-copy-for-one-original basis; (b) that the original media that form the basis for 1:1 correspondence are placed "on the shelf," i.e., not used for any purpose at all; (c) that the operator notify Slep-Tone that he or she has media-shifted karaoke tracks; and (d) that the operator submit to and be certified as having passed an audit of the operator's systems to verify complete compliance with the MSP.

29.     The basis of Slep-Tone's authority to require compliance with the MSP is its right to control the commercial use of its federally registered trademarks and, as to some tracks, its ownership of copyright in the synchronized audiovisual words represented by and in the sound recordings associated with those tracks.

30.     If an operator complies with all four conditions of the MSP, then that operator is granted permission from Slep-Tone, co-extensive only with Slep-Tone's rights in the subject matter, to use the media-shifted copies to provide commercial karaoke services.

31.     If an operator fails to comply with any of the conditions of the MSP, then none of the media-shifting the operator has conducted is permitted, authorized, or tolerated by Slep-Tone.

## THE RIGHTS OF THE PLAINTIFF

32.     Plaintiff Slep-Tone is the owner of U.S. Trademark Registration No. 1,923,448, issued October 3, 1995, and renewed once, for the trademark SOUND CHOICE, for "pre-

recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions."

33.     Plaintiff Slep-Tone is the owner of U.S. Service Mark Registration No. 4,099,045, issued February 14, 2012, for the trademark SOUND CHOICE, for "conducting entertainment exhibitions in the nature of karaoke shows."

34.     Plaintiff Slep-Tone is the owner of U.S. Trademark Registration No. 2,000,725, issued September 17, 1996, and renewed once, for a display trademark as follows:



for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions."

35.     Plaintiff Slep-Tone is the owner of U.S. Service Mark Registration No. 4,099,052, issued February 14, 2012, for the same display trademark as in the preceding paragraph, for "conducting entertainment exhibitions in the nature of karaoke shows."

36.     Slep-Tone has, for the entire time its marks identified above ("the Sound Choice Marks") have been federally registered, provided the public, including the Defendants, with notice of those federal registrations through the consistent display of the symbol ® with its marks as used.

37.     Principally, the Sound Choice Marks are indicators of Slep-Tone as the origin of karaoke accompaniment tracks, meaning that those marks indicate that the tracks to which they are applied were made and distributed by Slep-Tone or at its direction and under its control.

38.     Slep-Tone is the owner of distinctive and protectable trade dress associated with its graphical displays ("the Trade Dress").  This distinctive and protectable trade dress includes,

at a minimum, (a) the use of a particular typeface, style, and visual arrangement in displaying the lyrics; (b) the Sound Choice Marks; and (c) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue.

39.     Slep-Tone has used its trade dress continuously and substantially exclusively for a period of decades.

40.     The individual and collected elements of the Trade Dress have acquired secondary meaning as an indicator of Slep-Tone as a source, effectively functioning as a visual trademark.

41.     The aforementioned trade dress serves to distinguish Slep-Tone's tracks from the tracks of their competitors, such that persons who are even minimally frequent consumers of karaoke entertainment services such as those provided by these Defendants are capable of identifying a particular karaoke track as originating with Slep-Tone simply by examining the Trade Dress or any significant portion thereof, whether or not the Sound Choice Marks are also displayed.

42.     The elements of the Trade Dress represent specific design choices by the Plaintiff; they are but three of many ways to convey the information necessary to permit a karaoke singer to be appropriately supported in his or her performance.

43.     No competitor of Slep-Tone is required to use any element of the Trade Dress to accomplish the cueing function, and indeed all of the Plaintiff's known competitors are known to use other trade dress in accomplishing the cueing function.

## ACTIVITIES OF THE DEFENDANTS

44.     Defendants provide karaoke services to various venues in Illinois, principally concentrated in the Chicago metropolitan area.

45.     On information and belief, in order to provide services, rather than using original karaoke discs that it possesses (if it indeed possesses such discs), Defendants rely upon one or more computer hard drives that store files representing karaoke accompaniment tracks.

46.     On information and belief, Defendants rely upon at least one such computer hard drive described in paragraph 45 herein.

47.     On information and belief, Defendants create, or direct another to create, or otherwise acquired from a third party the files that are stored on its computer hard drive(s).

48.     On information and belief, Defendants do not maintain a 1:1 correspondence relationship between its hard drives and original discs it has lawfully acquired.

49.     Slep-Tone did not authorize, cause, control, or know about the creation of the files stored on the Defendants' computer hard drives at the time those files were so stored.

50.     Rather, on information and belief, the files were created by or at the behest of the Defendants, or by a third party unknown to Slep-Tone.  The party who created the files is the "origin" of the files for purposes of the Trademark Act.

51.     On information and belief, many of the files stored on the Defendants' computer hard drives are representative of karaoke tracks originally created by Slep-Tone and are marked with the Sound Choice Marks.

52.     When played as intended using appropriate software, those files cause the Sound Choice Marks and the Trade Dress to be displayed as part of the associated video component of the karaoke tracks they represent.

53.     Slep-Tone did not authorize the Defendants to create or use karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks or the Trade Dress.

54.     As such, the placement of the Sound Choice Marks and the Trade Dress upon the Defendants' self-created computer files is a false designation of the origin of those computer files.

55.     At all times relevant to the causes of action stated herein, the Defendants have known that the creation and use of karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks and/or the Trade Dress is not authorized.

56.     Defendants' files, which function as karaoke accompaniment tracks, are also counterfeits of genuine SOUND CHOICE-branded tracks.

57.     A patron or unwitting customer of the Defendants, when confronted with the display of the Sound Choice Marks and the Trade Dress at one of the Defendants' shows, is likely to be confused into believing, falsely, that Slep-Tone created the tracks in use or authorized their creation.

58.     Defendants' use of the computer files representative of karaoke accompaniment tracks is commercial in nature because they are paid to provide access to and play those computer files and tracks at karaoke shows.

59.     Additionally, even if a particular counterfeit track is not played at a given show, the act of making that track available for play at a show is a commercial act for which Defendants are compensated and which inures to its benefit.

60.     Defendants' piracy of accompaniment tracks is not limited to Slep-Tone's tracks, but extends to the piracy of numerous other manufacturers' tracks as well, on the same terms as above.

## ACTIVITIES OF SPECIFIC DEFENDANTS

### Defendant Diane Klemz

61.     On information and belief, Klemz facilitated karaoke shows at multiple venues in this State.

62.     On information and belief, the Sound Choice Marks were displayed on video monitors during various songs played by Klemz.

63.     Slep-Tone obtained photographs and videos of displays of the Sound Choice Marks.

64.     On information and belief, Klemz has not complied with Slep-Tone's MSP, and therefore her use of the Sound Choice Marks were not authorized proper use.

### Defendant John Jensen

65.     On information and belief, Jensen facilitated karaoke shows at multiple venues in this State.

66.     At the aforesaid show, on information and belief, the Sound Choice Marks were displayed on video monitors during various songs played by Jensen.

67.     Slep-Tone obtained photographs and videos of the displays of the Sound Choice Marks at the aforesaid show.

68.     On information and belief, Jensen has not complied with Slep-Tone's MSP, and therefore his use of the Sound Choice Marks were not authorized proper use.

### Defendant Joe Gaytan

69.     On information and belief, Gaytan facilitated karaoke shows at multiple venues in this State.

70.     At the aforesaid show, on information and belief, the Sound Choice Marks were displayed on video monitors during various songs played by Gaytan.

71.     Slep-Tone obtained photographs and videos of the displays of the Sound Choice Marks at the aforesaid show.

72.     On information and belief, Gaytan has not complied with Slep-Tone's MSP, and therefore his use of the Sound Choice Marks were not authorized proper use.

### Defendant Laura Drzewiecki

73.     On information and belief, Drzewiecki facilitated karaoke shows at multiple venues in this State.

74.     At the aforesaid show, on information and belief, the Sound Choice Marks were displayed on video monitors during various songs played by Drzewiecki.

75.     Slep-Tone obtained photographs and videos of the displays of the Sound Choice Marks at the aforesaid show.

76.     On information and belief, Drzewiecki has not complied with Slep-Tone's MSP, and therefore his use of the Sound Choice Marks were not authorized proper use.

### Defendants Mary Mac McCloskey and Maryaoke Karaoke, Inc.

77.     On information and belief, McCloskey and Maryaoke Karaoke facilitated karaoke shows at multiple venues in this State.

78.     At the aforesaid shows, on information and belief, the Sound Choice Marks were displayed on video monitors during various songs played by McCloskey and Maryaoke Karaoke or their agents.

79.     Slep-Tone obtained photographs and videos of the displays of the Sound Choice Marks at the aforesaid show.

80.     On information and belief, McCloskey and Maryaoke Karaoke have not complied with Slep-Tone's MSP, and therefore his use of the Sound Choice Marks were not authorized proper use.

### Defendant Cheryl Baggs

81.     On information and belief, Baggs facilitated karaoke shows at multiple venues in this State.

82.     At the aforesaid shows, on information and belief, the Sound Choice Marks were displayed on video monitors during various songs played by Baggs.

83.     Slep-Tone obtained photographs and videos of the displays of the Sound Choice Marks at the aforesaid show.

84.     On information and belief, Baggs has not complied with Slep-Tone's MSP, and therefore his use of the Sound Choice Marks were not authorized proper use.

### ACTIVITIES OF NON-PARTY BARS AND RESTAURANTS

85.     Various non-party bars and restaurants have hired the Defendants to provide commercial karaoke services at their establishments.

86.     These non-parties have not been added to this pleading, though Plaintiff reserves the right to amend to add these potential defendants in due course in a manner consistent with the Federal Rules of Civil Procedure.

87.     These bars and restaurants have received a financial benefit from the provision of infringing karaoke services at their establishments by the Defendant, through the attraction of paying patrons to their establishments.

88.     As such, each of the bars and restaurants related to these allegations are operating in actual or apparent partnership with the Defendants, in a symbiotic relationship from which both benefit.

89.     Each of the bars and restaurants are liable for the acts of trademark infringement directly engaged in by the Defendants on their respective premises or for their benefit.

## DAMAGES

90.     Defendants' unauthorized use of the Slep-Tone's trademarks has damaged Slep-Tone.

91.     Defendants damaged Slep-Tone in an amount to be proven at trial but not less than $25,000 for each karaoke system they own or operate and which contains karaoke tracks that infringe the Sound Choice Marks as detailed above, based upon their foregone purchases of original media.

92.     Defendants have also enjoyed years of revenues attributable in substantial part to its use of counterfeit SOUND CHOICE-branded karaoke tracks to provide karaoke services for money.

93.     Defendants' illicit activities have also allowed it to compete unfairly against Slep-Tone's legitimate customers by lowering its cost of doing business through piracy of the music materials it uses.

94.     Those illicit activities exerted illegitimate and unfair pressure upon the market for karaoke services in the areas in which the Defendants operate by helping to crowd higher-cost but legitimate operators out of the market.

95.     Defendants' acts deprived Slep-Tone of revenue by discouraging legitimate operators from investing in legitimate SOUND CHOICE-branded products.

## FIRST CLAIM FOR RELIEF
## TRADEMARK AND TRADE DRESS INFRINGEMENT
### (Against All Defendants)

96.     Slep-Tone repeats and incorporates by reference herein its allegations contained in Paragraphs 1-95 of this Complaint.

97.     Defendants used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

98.     Use of the Sound Choice Marks and the Trade Dress by Defendants were "in commerce" within the meaning of the Trademark Act of 1946 as amended.

99.     Slep-Tone did not license Defendants to manufacture or acquire reproductions, counterfeits, or copies of, or to use, the Sound Choice Marks or the Trade Dress in connection with the provision of their services.

100.     Use of the Sound Choice Marks and the Trade Dress by Defendants in this manner is likely to cause confusion, or to cause mistake, or to deceive their customers and patrons into believing that their services are being provided with the authorization of Slep-Tone and that their music libraries contain bona fide Sound Choice accompaniment tracks.

101.     On information and belief, the acts of Defendants were willful, knowing, and intentional.

102.     Slep-Tone has been damaged by these infringing activities.

103.    Unless enjoined by the Court, the infringing activities as described above will continue unabated and will continue to cause harm to Slep-Tone.

## SECOND CLAIM FOR RELIEF
### UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
### (Against All Defendants)

104.    Slep-Tone repeats and incorporates by reference herein its allegations contained in Paragraphs 1-95 of this Complaint.

105.    On each occasion Defendants caused or permitted an unauthorized counterfeit duplicate of a Slep-Tone accompaniment track to be played during a karaoke show at a given establishment, the Sound Choice Marks and the Trade Dress were displayed in connection with the Defendants' karaoke services.

106.    The display of the Sound Choice Marks and the Trade Dress is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that Slep-Tone manufactured the karaoke accompaniment tracks in use at the establishment or otherwise sponsored or approved the Defendants' services and commercial activities.

107.    The display of the Sound Choice Marks and the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by Slep-Tone and purchased or otherwise licensed by Defendants.

108.    Defendants' use of Slep-Tone's marks and trade dress in this fashion or in a more appropriate fashion would have inured to the benefit of Slep-Tone if Defendants had legitimately acquired bona fide original media instead of counterfeiting them or acquiring counterfeit copies, in that Slep-Tone would have received revenue from such sales.

109.     Because Slep-Tone has been denied this revenue, it has been damaged by Defendants' uses.

110.     On each occasion when Defendants caused or permitted an accompaniment track pirated from a manufacturer other than Slep-Tone to be played during a karaoke show, the words, names, and symbols of the other manufacturer were displayed in connection with the Defendants' karaoke services.

111.     Upon information and belief, Defendants' use of those words, names, and symbols falsely designates the other manufacturer as the origin of the pirated track, when in fact Defendants or an upstream but unauthorized provider of the track was the origin of that track.

112.     The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the pirated tracks are legitimate, authorized, and authentic materials that Defendants acquired in a legitimate manner.

113.     The display of the false designations of origin is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by those manufacturers and purchased by Defendants.

114.     Defendants' use of the false designations of origin in this fashion damages Slep-Tone by enabling Defendants to provide or obtain karaoke services at a lower cost than persons who acquire those materials legitimately, including Slep-Tone's legitimate customers, can provide or obtain them.

115.    The consequential denial of revenue from a legitimate market for Slep-Tone's customers' services prevents Slep-Tone's customers from making purchases of material from Slep-Tone and is thus a denial of revenue to Slep-Tone.

116.    Because Slep-Tone has been denied this revenue, it has been damaged by Defendants' false designations of origin relating to other manufacturers.

117.    Unless enjoined by the Court, the Defendants' unfair competition activities as described above will continue unabated and will continue to cause harm to Slep-Tone.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Slep-Tone prays for judgment against each of the Defendants, and that the Court:

A.    Find that Defendants committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks and of the Trade Dress;

B.    Find that Defendants engaged in unfair competition detrimental to Slep-Tone in violation of 15 U.S.C. § 1125(a);

C.    Enter judgment against Defendants and in favor of Slep-Tone on all applicable counts;

D.    Find the Defendants' activities were in all respects conducted willfully and for profit;

E.    Award to Slep-Tone the Defendants' profits and the damages sustained by Slep-Tone because of the Defendants' conduct in infringing the Sound Choice Marks, the Sound Choice Trade Dress, or both, or, in the alternative, statutory damages per trademark infringed by counterfeiting, and in any event in an amount not less than $25,000 for each karaoke system

operated by Defendants, and not less than $50,000 for each establishment in which the infringement occurred;

F.     Award to Slep-Tone Defendants' profits and the damages sustained by Slep-Tone because of the Defendants' acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount not less than $25,000 for each karaoke system operated by Defendants, and not less than $50,000 for each establishment in which the infringement occurred;

G.     Award to Slep-Tone treble, punitive, or otherwise enhanced damages, as available, for Defendants' acts of willful infringement;

H.     Order all computer disks, drives, or other media belonging to Defendants, which media contain counterfeits of Slep-Tone's marks, or of marks belonging to other manufacturers, to be delivered up for destruction;

I.     Grant Slep-Tone preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks by Defendants;

J.     Grant Slep-Tone preliminary and permanent injunctive relief against further false designations of origin by Defendants with respect to words, names, and symbols associated with other manufacturers;

K.     Award Slep-Tone its costs suit and attorney fees, to the extent not awarded above; and

L.     Grant Slep-Tone such other and further relief as justice may require.

Respectfully submitted this the 10th day of January 2014.

Respectfully Submitted,

/s/ Frank Young

Frank Young
An Attorney for Plaintiff

Attorneys for Plaintiff Slep-Tone:

Konrad Sherinian
Depeng Bi
Frank Young
The Law Offices of Konrad Sherinian, LLC
1755 Park Street, Suite #200
Naperville, IL 60563
Phone: (630) 318-2606
Fax: (630) 318-2605
Email: ksherinian@sherinianlaw.net
Email: ebi@sherinianlaw.net
Email: fyoung@sherinianlaw.net