IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, | |
| Plaintiff, | |
| v. | Case No.: 1:14-cv-189 |
| DIANE KLEMZ, JOHN JENSEN, JOE GAYTAN, LAURA DRZEWIECKI, MARY MAC MCCLOSKEY, MARYAOKE KAROAKE, INC., and CHERYL BAGGS, | MOTION FOR DEFAULT JUDGMENT District Judge Sara Ellis |
| Defendants. | |

**SLEP-TONE ENTERTAINMENT CORPORATION'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT LAURA DRZEWIECKI**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiff, Slep-Tone Entertainment Corporation ("Slep-Tone"), by and through its attorneys, The Law Offices of Konrad Sherinian, LLC, hereby moves for entry of default judgment against Defendant Laura Drzewiecki ("Drzewiecki").

**INTRODUCTION**

After many years of efforts to regulate the use of its trademarks in the Chicago karaoke market, on January 10, 2014, Slep-Tone initiated a lawsuit against six defendants, alleging trademark infringement and unfair competition. Both causes of action arose under the Trademark Act of 1946, often referred to as the Lanham Act.

On January 27, 2014, the Clerk issued a summons directed to Drzewiecki. Dkt. 7 at 1. On January 31, 2014, Drzewiecki was served with copies of the summons and complaint via personal service by a third-party process server. Dkt. 7 at 2. Drzewiecki's answer or other

1

response was due no later than February 21, 2014. Dkt. 7; Fed. R. Civ. P. 12(a)(1)(A)(i). Drzewiecki failed to file an answer or otherwise respond to the complaint, timely or otherwise, and Slep-Tone moved for entry of default as to Drzewiecki on March 19, 2014. Dkt. 31. On March 19, 2014, the Court ordered the entry of default against Drzewiecki. Dkt 33.

At no time has Drzewiecki filed an answer with the Court. Neither Drzewiecki, nor her attorney, has informed Slep-Tone's counsel of any intent to file an answer in this matter. See Declaration of Frank Young, attached hereto as Exhibit A ("Ex. A"), ¶ 6.

**ARGUMENT**

Drzewiecki's failure to respond to the complaint is grounds for this Court to enter a default judgment. A court has decision to enter a default judgment. See *O'Brien v. R.J. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993); *American Taxi Dispatch, Inc. v. American Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). When a defendant is served with the complaint and fails to respond, Fed. R. Civ. P. 55(a) permits the court to rule that the defendant is in default. See *O'Brien*, 998 F.2d at 1398. When the court grants a default against a party, all well-pleaded allegations of the complaint will be taken as true. *Wehrs v. Wells*, 688 F.3d 886, 888 (7th Cir. 2012); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *O'Brien*, 998 F.2d at 1404. In accordance with Fed. R. Civ. P. 54(c), which provides that a "judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment," the proposed Order of Default Judgment submitted herewith is based on the relief Slep-Tone requested in the complaint: monetary relief, Dkt. 1 at ¶¶ E-G and K, seizure and destruction of the infringing articles, Dkt. 1 at ¶ H, and a permanent injunction, Dkt. at ¶ J.

**I.      The allegations in the Complaint and the evidence submitted herewith establish Drzewiecki's liability for trademark infringement and unfair competition.**

The Slep-Tone's complaint sets forth claims for federal trademark infringement involving counterfeiting and for unfair competition under the Lanham Act. The facts alleged in support of those claims, as supplemented and substantiated by the evidence submitted herewith, are conclusive on the question of Drzewiecki's liability on the claims.

**A.      Slep Tone properly pleaded trademark infringement in its Complaint and the factual allegations therein are now deemed admitted by Drzewiecki.**

The Lanham Act expressly prohibits the use of a registered trademark in connection with "the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). The Complaint alleges the following facts that are material to the claim for trademark infringement:

- Plaintiff Slep-Tone is the owner of U.S. Trademark Registrations No. 1,923,448 and 4,099,045, both for the mark SOUND CHOICE®, and of U.S. Trademark Registrations No. 2,000,725 and 4,099,052, both for a display trademark SOUND CHOICE & Design® ("the Marks"). The Registrations are attached hereto as Exhibits C, D, and E; see also Dkt. 1 at ¶¶ 32-35.

- Plaintiff Slep-Tone is a beneficiary of the goodwill associated with the Marks, in that sales of karaoke discs marked with the Marks inures to the benefit of Plaintiff. Dkt. 1 at ¶ 108.

- The Plaintiff has consistently used the ® symbol to denote the registration of the Marks and thereby to give notice to the public that the Marks are federally registered. Dkt. 1 at ¶ 36.

- Drzewiecki used a reproduction, counterfeit, or copy of the Marks in connection with her providing karaoke services, by displaying that reproduction, counterfeit, or copy during the provision of her services at various venues. Dkt. 1 at ¶¶ 56, 59, 74.

- Drzewiecki directly benefited from the use of a reproduction, counterfeit, or copy of the Marks in connections with the provision of karaoke services, when she displayed that reproduction, counterfeit, or copy during the provision of her services. Dkt. 1 at ¶¶ 56, 59, 92, 97.

- An unauthorized digitized copy of the Plaintiff's karaoke discs or music tracks is a counterfeit. Dkt. 1 at ¶¶ 49, 53, 55, 57, 76.

- Drzewiecki did not have a license or other permission to create digitized copies of the Plaintiff's karaoke discs or of the karaoke tracks contained thereon. Dkt. 1 at ¶ 99.

- Drzewiecki's unauthorized use of counterfeits of the Marks is likely to cause consumer confusion by deceiving customers and patrons of the venues where she performed (including persons who are entertained through her services, whether or not they pay those venue's directly for that entertainment) into believing that her services are being provided with Slep-Tone's authorization. Dkt. 1 at ¶ 100.

- Drzewiecki's actions were willful. Dkt. 1 at ¶ 101.

- Slep-Tone has been harmed by Drzewiecki's infringing activities. Dkt. 1 at ¶¶ 102-103.

**B.  Consumer confusion is established as a matter of fact.**

Whether consumers are likely to be confused about the origin of a defendant's product or services is a question of fact. *Autozone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000). As Drzewiecki is

4

in default, all well-pleaded facts in the complaint shall be taken as true. *Black*, 22 F.3d at 1399. To establish likelihood of confusion, the 7th Circuit has established seven factors: "1) similarity between the marks in appearance and suggestion; 2) similarity of the products; 3) the area and manner of concurrent use; 4) the degree of care likely to be exercised by consumers; 5) the strength of plaintiff's mark; 6) whether actual confusion exists; and 7) whether the defendant intended to "palm off" his product as that of the plaintiff." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 677-678 (7th Cir. 2001).

Based on the facts pleaded in the complaint and outlined above, the similarity between the marks and of the products is virtually identical. As Drzewiecki has copied, benefited from, or acquired counterfeit tracks of Slep-Tone's product bearing Slep-Tone's marks, Drzewiecki has used these same marks in connection with a virtually identical product. Regarding factors three and four, area and manner of use and degree of care exercised by consumers, Drzewiecki's use is the same as legitimate karaoke jocks in the Chicago market who must compete with her, and Drzewiecki is able to undercut legitimate karaoke jocks as she illegitimately acquired counterfeits of Slep-Tone's products and trademarks. Furthermore, other hiring venues and end consumers of karaoke service are unlikely to use a high degree of care in determining the source of the product presented to them and will assume Drzewiecki's use of the counterfeit tracks is an unauthorized use to the detriment of competing legitimate karaoke jocks and Slep-Tone.

The strength of Slep-Tone's marks should be considered strong based on the complaint and evidence of federal registration. Slep-Tone's marks are associated with every track Slep-Tone produces and serves as reinforcement to its consumers that the product is one of high quality. Given the totality of the circumstances, a finding of likelihood of confusion is appropriate. As for Drzewiecki's intent, it is clear based on the record and complaint that her

activities were conducted in bad faith, with the intent to utilize Slep-Tone's mark for her own gain. Declaration of Kurt J. Slep attached hereto as Exhibit B, ("Ex. B") at ¶¶ 10-13.

  **C. The allegations of the Complaint and the evidence presented herewith also establish Sound Choice's claim against Drzewiecki's for unfair competition under 15 U.S.C. § 1125(a).**

The existence of the likelihood of confusion establishes Drzewiecki's liability not only for trademark infringement as discussed above, but also for false designation of origin. "[U]nder the Lanham Act [15 U.S.C. § 1125(a)], the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion'?" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (quotation omitted). Because Slep-Tone is not seeking a double recovery, it respectfully submits that the acts of unfair competition merely bolster the underlying claim for trademark infringement and serve as an alternative ground for the damages and other relief they seek.

Moreover, Slep-Tone requests that Drzewiecki and her agents, employees, and all persons in active concert or participation with her to be permanently enjoined (a) from using (including making, copying, sharing, distributing, selling, or otherwise using, and particularly including use to provide karaoke services), commercially or otherwise, any karaoke accompaniment track that is marked with either the mark in U.S. Trademark Registration No. 1,923,448 and 4,099,045, both for SOUND CHOICE®, or the mark in U.S. Trademark Registration No. 2,000,725 and 4,099,052, both for a display trademark SOUND CHOICE & Design®, without the prior, express written permission of Slep-Tone or its successor-in-interest, if any, to the ownership of those marks, and (b) from making, copying, sharing, distributing, selling, or otherwise using digitized copies of karaoke accompaniment tracks, commercially or

otherwise, which tracks are marked with any mark or other designation belong to any person from whom the Defendant has not obtained written authorization from the owner thereof to make, copy, share, distribute, sell, or otherwise use the digitized copy.

**II.     Slep-Tone is entitled to entry of an award of statutory damages and a permanent injunction.**

Under the statutory damages provision of the Lanham Act, a trademark owner may elect, at any time before final judgment is rendered, to recover an award of statutory damages for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services.  See 15 U.S.C. § 1117(c).  "Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark."  *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 865 (N.D. Ill. 2009) (quotation and citation omitted).  "[A] counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."  15 U.S.C. § 1116(d)(1)(B)(I).

Slep-Tone elects to receive an award of statutory damages from Drzewiecki.  In addition to the recovery of statutory damages, the Lanham Act provides that a court may grant a trademark owner injunctive relief, "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office … ."  15 U.S.C. § 1116(a).

**A.     Slep-Tone is entitled to significant statutory damages for Drzewiecki's intentional and knowing trademark infringement.**

"The district court had almost unfettered discretion in setting its statutory damages award within the prescribed range."  *Broad. Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 489 (7th

7

Cir. 1995) (interpreting analogous statutory damages provision in Copyright Act). Under the Lanham Act, the present statutory minimum and maximum amounts are $1,000 to $200,000, respectively, for each counterfeit trademark. See 15 U.S.C. § 1117(c). In cases involving willful infringement, the maximum is increased to $2,000,000. *Id.*

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed reckless disregard for the owner's rights." *Microsoft Corp. v. Logical Choice Computers, Inc.*, Case No. 99-CV-1300, Dkt. 97 at 26 (N.D. Ill. Jan. 22, 2001). An infringement is willful, hence triggering enhanced statutory damages, if the defendant had knowledge that its actions constituted an infringement. This knowledge, however, need not be actual; constructive knowledge can suffice. *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380-381 (7th Cir. 1988). Courts consider a defendant's continued infringement after notice of his/her wrongdoing to be probative evidence supporting a finding of willfulness. *Id.*

Slep-Tone has demonstrated that Drzewiecki was aware that her actions violated the Slep-Tone's intellectual property. Even after being served with a summons and the complaint in this matter, Drzewiecki has persisted in her unlawful use of the Marks. Ex. B at ¶ 13. Despite being presented with the opportunity on numerous occasions to discuss this matter with Slep-Tone's counsel, Drzewiecki has utterly failed to present any sort of defense, to negotiate terms under which she would stop the use of the Marks or obtain the appropriate authority to do so, or even to assert a reasonable basis for her continued use. Ex. B at ¶¶ 11-13.

Another factor to be considered when awarding enhanced statutory damages is the deterrent effect on Drzewiecki and others. Courts have recognized deterrence of the particular defendant and deterrence of others as proper objectives of a statutory damages award. See

*Sands, Taylor & Wood v. The Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994); *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110, 1117 (2nd Cir. 1986) ("Awards of statutory damages serve two purposes—compensatory and punitive."). As Slep-Tone noted in the complaint, infringement of the type Drzewiecki has committed is widespread and has had a devastating impact upon Slep-Tone's business and the industry generally. Dkt. 1 at ¶¶ 24-25, 90-95. A significant award of damages is necessary to deter others from this kind of unlawful conduct.

Because this is willful infringement, the Court has the discretion to make an award of up to $2,000,000 for each registered mark infringed by Drzewiecki's conduct, which is up to $4,000,000 total. Slep-Tone respectfully suggests that a total award of $50,000 in statutory damages is appropriate on this default judgment, on the basis of Drzewiecki's knowledge of the infringement, her ability (and refusal) to control the infringement, and the benefit she derived from the infringement. This figure is appropriate because (1) it is well within the limits of statutory damages even for non-willful infringement, (2) it is an award that is commensurate with the degree of infringing activity Drzewiecki is believed to have been engaged in, and (3) as a penalty, it is sufficient to deter Drzewiecki and others from engaging in infringement.

If Drzewiecki had participated in this case, Slep-Tone would have been able to ascertain with certainty, through discovery, the extent to which Drzewiecki profited from her infringement. In the absence of discovery, neither Slep-Tone nor the Court can be certain of the financial impact of the infringement. The precise number, however, is not necessarily material to the determination of the award, because statutory damages are awarded on a per-mark basis. The requested awards are plainly justified, both as expressions of the degree to which Drzewiecki profited unfairly from her free, unlicensed use of Slep-Tone's intellectual property,

and as a deterrent to others who would engage in the same conduct. Simply put, an award that is significantly less than these figures would counsel other karaoke jocks to begin or continue to use their pirated materials, and once caught, to ignore the lawsuit, knowing that a default judgment would cause them less grief than participating in the judicial process. Slep-Tone therefore respectfully suggests that a statutory damage award of $50,000 is eminently supportable by the record and meets all of the criteria established by the statute and by case law.

    **B.    The Court should enter a permanent injunction barring Drzewiecki's unauthorized use or display of the Sound Choice Marks.**

In addition to the statutory damages award, the Plaintiff is entitled to injunctive relief. Under the Lanham Act, when a trademark owner's rights are being violated, that party is entitled to an injunction. See 15 U.S.C § 1116(a). Although damages are important to compensate Slep-Tone for Drzewiecki's past infringement, it is equally important for Drzewiecki to be stopped from continuing that wrongful conduct. Slep-Tone believes that a permanent injunction should leave Drzewiecki with the possibility of continuing to offer karaoke shows as long as she adheres to federal and state law in doing so. Therefore, Slep-Tone does not request that Drzewiecki be permanently banned, in a blanket sense, from the use or display of the Sound Choice Marks. Rather, Slep-Tone has established guidelines for media-shifting its karaoke tracks. In order to media-shift Sound Choice tracks:

- Drzewiecki must purchase one authorized copy of each Sound Choice karaoke track on an authorized, original medium (CD) for each alternative medium (such as a hard drive) to which she wishes to shift the content.

- If a track is shifted to another medium, the entire track must be shifted (i.e., no "chopping").

- Drzewiecki must maintain ownership and possession of both the authorized original medium and the alternative medium during the entire time in which the content has been shifted to the alternative medium.

- Drzewiecki must not use the authorized original medium to produce a karaoke show or for any other commercial purpose (including shifting the content to another alternative medium) during the time in which the content has been shifted to the alternative medium.

- If Drzewiecki discontinues possession of either the authorized original medium or the alternative medium, the associated tracks must be removed from the alternative medium.

- Drzewiecki must notify Slep-Tone that she intends to conduct or have conducted a media-shift or format- shift, and submit to a verification of adherence to Slep-Tone's policy.

Karaoke jocks who follow this media-shifting policy are considered by Slep-Tone not to be infringing its trademarks. Accordingly, Slep-Tone respectfully requests entry of a permanent injunction against the display of the Sound Choice Marks by Drzewiecki during her provision of karaoke entertainment services, unless she is compliant with the above policy.

### C. The Court should order the destruction of Drzewiecki's equipment containing the means by which she infringes the Sound Choice Marks to provide a concrete deterrent to his further infringement.

Slep-Tone urges the Court additionally to order the destruction of Drzewiecki's equipment containing the means by which she infringes the Sound Choice Marks, specifically her hard drives and other media containing unauthorized counterfeits of the Sound Choice Marks, both as a mechanism to support enforcement of the aforementioned permanent injunction and as a deterrent of future acts of infringement.

The Trademark Act provides for the destruction of infringing articles:

> In any action arising under this Act, in which a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a

11

> violation under section 43(a), or a willful violation under section 43(c), shall have been established, the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or, in the case of a violation of section 43(a) or a willful violation under section 43(c), the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

15 U.S.C. § 1118.

Although the destruction provided for in § 1118 is not mandatory, destruction is appropriate in this case because of the relative ease with which the Defendant could utilize the hard drives to conduct additional counterfeiting activities in a manner that avoids ready detection.

If the Court enters the permanent injunction to which Slep-Tone is entitled, then Drzewiecki will be barred from the use and sale of the infringing articles. But her continued possession of the hard drives, which are small and easily duplicated, would allow her to make numerous additional counterfeit copies of the Sound Choice Marks in a manner that avoids easy detection. Permitting Drzewiecki to keep the hard drives would impose an additional monitoring cost upon Slep-Tone, who would be expected to apprise the Court if they suspected she had been violating that order, before any action is taken.

While other courts have determined that when a permanent injunction has been ordered, "the rights of the plaintiff are adequately protected and an order requiring the destruction of infringing articles, though permitted, may be unnecessary," *Kelley Blue Book v. Car-Smarts, Inc*., 802 F.Supp. 278, 293 (C.D. Cal. 1992); *Bonanza Intern., Inc. v. Double "B"*, 331 F. Supp. 694, 697 (D.C. Minn. 1971), an injunction, by itself, would not adequately protect Slep-Tone against certain harms. The failure also to order the destruction of these

infringing articles would enable Drzewiecki to sell, transfer, or otherwise dispose of the hard drives in a manner that would permit another party to infringe Slep-Tone's marks in exactly the same way as Drzewiecki has done.

    As such, to remove any significant possibility that Drzewiecki can violate the injunction noted above by using the same mechanism as his past infringement, the Court should order her to deliver up those hard drives for destruction or, if necessary, should order the drives to be seized with the assistance of the US Marshals.

Date:  April 18, 2014                                          /s/ Frank Young

                                                                                       Frank Young
                                                                   An Attorney for Plaintiff

Attorneys for Plaintiff Slep-Tone:

Konrad Sherinian
Frank Young
The Law Offices of Konrad Sherinian, LLC
1755 Park Street, Suite #200
Naperville, IL 60563
Phone: (630) 318-2606
Fax: (630) 318-2605
Email: ksherinian@sherinianlaw.net
Email: fyoung@sherinianlaw.net